
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3070 | **DATE** | 7/27/2001 |
| **CASE TITLE** | DRAXIS U.S., INC. vs. WALGREEN COMPANY | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff Draxis U.S., Inc.'s motions for summary judgment on its complaint [10-1] and defendant Walgreen Company's counterclaim [12-1] are denied. The parties shall present their joint final pretrial order and agreed jury instructions on August 22, 2001 at 9:00 a.m.; plaintiff's draft pretrial order shall be given to defendant by August 13, 2001. Trial is set for September 12, 2001 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG - 6 2001 | 45 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 7/27/2001 | |
| | | date mailed notice | |
| sb | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG -3 PM 5:40 | pg |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRAXIS U.S., INC. | ) |
| Plaintiff, | ) No. 00 C 3070 |
| v. | ) Suzanne B. Conlon, Judge |
| WALGREEN COMPANY | ) |
| Defendants. | ) |

**DOCKETED**
**AUG - 6 2001**

## MEMORANDUM OPINION AND ORDER

Draxis U.S., Inc. ("Draxis") sues Walgreen Co. ("WalGreens") for breach of contract and seeks collection of unpaid invoices plus interest. Walgreens counterclaims for breach of written contract (Count I), breach of oral contract (Count II), account stated (Count III), and unjust enrichment (Count IV). Draxis moves for summary judgment on its complaint and Walgreens' counterclaim, pursuant to Fed.R.Civ.P. 56.

## BACKGROUND

I.  **The parties**

   A. **Draxis**

All facts are undisputed unless otherwise noted. Draxis is a Delaware corporation with its principle place of business in Indiana. During all relevant times, Draxis manufactured pharmaceutical products, including a soapless cleanser called SpectroDerm. In 1993, Draxis hired Bernie Marzalik ("Marzalik") as an independent consultant. Ten months later, Mazalik took over Dr. Martin Barkin's ("Barkin") position as president of Draxis.

Michael Mercurio ("Mercurio") was Draxis' director of operations from April 1997 until

January 5, 1999. Mercurio was responsible for establishing SpectroDerm in the United States. Prior to being hired, he presented SpectroDerm marketing plans to Barkin. Neither Barkin nor Marzalik informed Mercurio of any limitations on his designated job authority.

McWeeney ("McWeeney") is president of McWeeney & Associates, a manufacturer's representative firm. McWeeney acted as a sales representative for Draxis.

### B. Walgreens

Walgreens is an Illinois corporation with its principle place of business in Illinois. Walgreens sells a variety of merchandise and pharmaceutical products to the retail public. Barbara Larson ("Larson") is a category manager for Walgreens' purchasing department. Michael Kennedy ("Kennedy") is the manager of Walgreens' rebate and vendor programs.

### II. The SpectroDerm agreement

In the fall of 1998, Walgreens ordered SpectroDerm inventory for the purpose of consumer resale. The product did not move off Walgreens' shelves as quickly as Draxis and Walgreens desired. Consequently, Mercurio, McWeeney, and Larson signed an agreement that implemented a "freebate program." The program essentially provided consumers with free samples of SpectroDerm in the form of full rebates. Under the agreement, Draxis would reimburse Walgreens the purchase price of SpectroDerm up to $10.99 per item sold in return for Walgreens issuing full retail price rebates to its SpectroDerm customers. The agreement further provided that Draxis would pay an initial deposit and a final invoice at the end of the promotional period. Walgreens was authorized to reduce the amount it owed for SpectroDerm inventory by the amount Draxis owed for the "freebate program." McWeeney, Mercurio, and Larson understood that the cost of the "freebate program" would be Draxis' responsibility.

Under the terms of the September 15 agreement, the "freebate program" was scheduled to run from January 1 to January 31, 1999.[1]

After the September 15 agreement was reached, Draxis cut back Walgreens' SpectroDerm inventory because the corporation wanted to limit the number of full rebates for which it would be liable. Walgreens continued to sell the reduced supply of SpectroDerm and paid rebates according to the September 15 agreement. Draxis subsequently sent invoices to Walgreens requesting payment for the inventory. Walgreens sent invoices and supporting documentation to Draxis indicating the amount owed for the rebates.

### III. Parties' claims

Draxis contends Walgreens refuses to pay $118,111.98 for SpectroDerm products that were shipped to the company. Walgreens asserts that, pursuant to the September 15 agreement, any amount owed for the inventory was to be reduced by the amount Draxis owes for the "freebate program." Walgreens further asserts Draxis owes $271,929.23 for the program. In effect, Draxis allegedly owes more than the corporation is seeking to recover from Walgreens.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Once a moving party has met its

---

[1] Evidence pertaining to an extension of the September 15 agreement will not be considered because the parties' statements of facts do not include this information. *See* Local Rule 56.1.

burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R. Civ.P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. The counterclaim

### A. Breach of written contract

To be legally enforceable, a contract must include an offer, acceptance, and consideration. *See e.g., International Business Lists, Inc. v. American Telephone and Telegraph Company*, 147 F.3d 636, 641 (7th Cir. 1998). Draxis contends the form signed on September 15 lacks these essential elements. Specifically, Draxis asserts: (1) the signed form is not entitled or identified as a contract or agreement; (2) the form cannot be read as requiring Draxis to reimburse Walgreens for the retail price of each redeemed purchase; (3) the form's reference to a "free offer" is unclear; and (4) the form does not indicate a total amount or an estimate as to how much Draxis would have to pay. Draxis Reply, pp. 4-6.

Questions of contract formation are typically the province of the jury. *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 795 (7th Cir. 1999). However, when "there is no dispute over the relevant facts, the question of the existence of a contract is solely a matter of law for determination by the court." *Malcak v. Westchester Park District*, 754 F.2d 239, 243 (7th Cir.

1985). Draxis fails to conclusively establish that a rebate agreement did not exist between the parties. The fact that the form is not specifically titled "contract" or "agreement" is irrelevant. The form is a contract if it includes an offer, acceptance, and consideration. *International Business Lists, Inc.*, 147 F.3d at 641.

There is evidence suggesting the rebate form represents an offer, acceptance, and consideration. It is undisputed that the form was created by a Walgreens' employee. The form offered a rebate arrangement. Answer, Ex. 2. Mercurio filled in SpectroDerm on the form and set the rebate at a maximum of $10.99. *Id.* Mercurio signed this agreement on behalf of Draxis under the heading "vendor authorization." *Id.* In regard to consideration, Draxis offers evidence that Mercurio knew SpectroDerm sales would increase by giving customers free samples. Walgreens Statement of Additional Facts ("Def. Facts") at ¶ 34. Furthermore, Draxis believed giving away samples of SpectroDerm was a good business decision. *Id.* at ¶ 33.

Draxis' remaining arguments raise issues of contract interpretation rather than contract formation. When a summary judgment motion depends on contract interpretation, the court must determine: (1) whether the contract is ambiguous or unambiguous and (2) if it is ambiguous, whether undisputed extrinsic evidence exists to establish the parties' intent. *Houben v. Telular Corporation*, 231 F.3d 1066, 1072 (7th Cir. 2000); *Hickey v. A.E. Staley Manufacturing*, 995 F.2d 1385, 1389 (7th Cir. 1993). "Ambiguity can be found only if the language [of the contract] is reasonably or fairly susceptible of more than one construction." *United States v. 4500 Audek Model Number 5601 AM/FM Clock Radios*, 220 F.3d 539, 543, n. 6 (7th Cir. 2000) (internal citations omitted). Even if the form signed on September 15 is ambiguous, the extrinsic evidence certainly fails to establish Draxis' lack of intent regarding rebate reimbursement. Draxis admits

-5-

that Mercurio understood the corporation's obligation to reimburse Walgreens in full for the rebates when he signed the September 15 agreement. *See* Local Rule 56.1(a) ("All material facts set forth in the statement filed pursuant to section (b)(3)(B) will be deemed admitted unless controverted by the statement of the moving party").[2] Accordingly, summary judgment on Count I must be denied.

### B. Breach of oral contract

To form an enforceable oral contract, the parties must have a meeting of the minds with respect to the agreement's terms. In addition, the parties must intend to be bound by the oral agreement. *M.T. Bonk Company v. Milton Bradley Company*, 945 F.2d 1404, 1407 (7th Cir. 1991) (internal citations omitted). The intent of the parties is generally a question of fact, but may become a question of law "if the facts are undisputed and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *David Copperfield's Disappearing, Inc. v. Haddon Advertising Agency, Inc.*, 897 F.2d 288, 290 (7th Cir. 1990).

Draxis asserts there is no evidence to establish a meeting of the minds between the parties pertaining to the "freebate program." Specifically, Draxis offers evidence that Larson could not remember having any conversations with Mercurio about the "freebate program." Draxis' 56.1 Statement of Facts ("Pl. Facts") at ¶ 8. Furthermore, Larson remembered talking to McWeeney about the program, but she could not remember the number of conversations they had or where

---

[2]Draxis' arguments pertaining to Mercurio's lack of authority will not be considered. The evidence offered in support of these arguments is not found within Draxis' 56.1 Statement of Facts. Draxis cites its "supplemental statement of facts" to support the arguments. This citation is wholly inadequate because it does not direct the court to the relevant portion of the supplemental facts. In addition, the supplemental facts do not comply with the local rules. They do not "consist of short numbered paragraphs." *See* Local Rule 56.1(a)(3).

they took place. *Id.* Additionally, Draxis offers evidence to show Mercurio did not verbally agree to the "freebate program" *prior* to September 15, 1998. The Mercurio evidence will not be considered by the court because it is not contained within Draxis' statement of facts. *See* Local Rule 56.1(a)(3). In addition, the evidence is irrelevant because Walgreens bases its oral contract claim on discussions that took place at the time the September 15 agreement was signed. Counterclaim at ¶ 16.

Walgreens offers evidence to show Draxis did agree to reimburse Walgreens for the SpectroDerm rebates. Specifically, Mercurio and McWeeney agreed to the inclusion of SpectroDerm in Walgreens "freebate program." Def. Facts at ¶¶ 43-46. In addition, Mercurio understood at the time he signed the September 15 agreement that Draxis was obligated to reimburse Walgreens for the SpectroDerm rebates. *Id.* At ¶ 43. Draxis fails to show the absence of disputed fact pertaining to the existence of an oral contract.

### C. Account stated

An account stated is "an agreement between parties who have had previous transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise . . . for the payment of such balance." *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corporation*, 477 N.E.2d 513, 542-43 (1st Dist. 1985). To establish account stated, there must be: (1) a course of dealings between the parties; and (2) "some rendering of a balance due, coupled with an agreement between the parties that the balance is owed by defendant to plaintiff." *Hosiery Manufacturing Corporation of Morgantown v. Williams*, No. 88 C 2211, 1989 WL 157969, at *3 (N.D. Ill. December 22, 1989). Draxis asserts there can be no account stated because there was no course of dealings between Draxis and

Walgreens. However, Draxis cites no evidence in its summary judgment memorandum or reply brief to support this argument.[3] Accordingly, Draxis' motion for summary judgment on Count III must be denied.

### D. Unjust enrichment

To establish unjust enrichment, Walgreens must show: (1) Draxis has been unjustly enriched; (2) the enrichment was at Walgreens' expense; and (3) Draxis' retention of the benefit would be unjust. *Abrams v. Unity Mutual Life Insurance Company*, 70 F.Supp.2d 846, 853 (N.D. Ill. 1999). Draxis asserts the corporation did not receive any benefit from the "freebate program." To support this position, Draxis merely points to Walgreens' failure to produce contrary evidence. This is insufficient for purposes of summary judgment. The burden is on the moving party to show entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).[4] Draxis' motion for summary judgment on Count IV is denied.

### III. Draxis' breach of contract claim

Draxis contends summary judgment on the complaint should be granted because Walgreens admits receiving and not paying for SpectroDerm orders. Walgreens asserts that its counterclaim should be treated as a setoff defense. It is true courts have authority to treat a counterclaim as an affirmative defense when appropriate. *See* Fed.R.Civ.P. 8(c) ("When a party

---

[3]Draxis' 56.1 Statement of Facts provides that there were no commercial transactions between Walgreens and SpectroDerm prior to September 15. Pl. Facts at ¶ 9. This evidence will not be considered by the court. The alleged fact was not referenced in Draxis' briefs and the cited deposition does not support this broad statement.

[4]In its reply brief, Draxis makes passing reference to the fact that it stopped marketing SpectroDerm in the United States. Draxis fails to indicate how this fact establishes the company did not benefit from the "freebate program." In addition, the statement is unsupported by citations to the record.

has mistakenly designated as a counterclaim . . . the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation"). When a setoff claim is not independent of the plaintiff's claim, the setoff may be treated as an affirmative defense. *Central States, Southeast and Southwest Areas Pension Fund v. Groesbeck Lumber & Supply, Inc.*, No. 99 C 1447, 2000 WL 246249, at *4 (N.D. Ill. February 24, 2000). *See also CIPA Manufacturing Corporation v. Allied Gold Corporation*, No. 94 C 6574, 1995 WL 337022, at *2 (N.D. Ill. June 1, 1995) (when the setoff "does not destroy the plaintiff's right of action, it is not an affirmative defense"). The September 15 agreement provides that any amount Walgreens owes Draxis for SpectroDerm invoices will be reduced by any amount Draxis owes Walgreens. Therefore, Walgreens' setoff claim is dependent upon Draxis' claim. The court may treat the setoff claim as an affirmative defense. Because Draxis has failed to establish the unenforceability of the September 15 agreement, the motion for summary judgment on the complaint must be denied.

## CONCLUSION

Draxis' motions for summary judgment on its complaint and Walgreens' counterclaim are denied.

ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge

July 27, 2001